Fischel v. Keer.

---

## ISAAC FISCHEL v. FREDERICK KEER.

1. The circumstances of this case, showing that an execution was fraudulently kept on foot to hinder subsequent creditors, it was held to be void as to them.
2. It is proper practice for a landlord, who is entitled to have his arrears of rent paid before the removal or sale of goods levied on, to apply to

the court for a' rule that the proceeds of the sale under execution be applied to the payment of his rent.

On motion for money in court and for a rule against a sheriff.

Argued at June term, 1883, before Justices PARKER and DIXON.

*Charles Borcherling* for Wilhelmina Keer, and also for Jane H. Alling.

*Mr. Hood* for the People's Insurance Co.

The opinion of the court was delivered by

DIXON, J.   On June 24th, 1879, a writ of *fi. fa. de bonis et terris* was issued out of the court at the suit of Isaac Fischel *v.* Frederick Keer, by virtue of which the sheriff of Essex county, on the following day, levied upon the defendant's stock of goods in his store in Newark.   Nothing further was done in execution of the writ till March, 1883, when so many of the goods levied on as could be identified were sold for $228.49.

On March 9th, 1883, a writ of *fi. fa. de bonis et terris* was issued out of the Court of Chancery at the suit of the People's Insurance Company of Newark *v.* Frederick Keer, by virtue of which the sheriff of Essex county forthwith levied on the defendant's stock of goods in the same store, and on the day after the sale above mentioned, the residue of these goods was sold under the execution for $482.52.

While these writs were in the hands of the respective sheriffs, Jane H. Alling, the landlady of the defendant's store, duly demanded of them $348.09, six months' rent in arrear.

The proceeds of the first sale have been brought into court, and are claimed by both plaintiffs and by the landlady, and the last named also has a rule that the sheriff holding the second execution satisfy her arrears out of the proceeds of his sale.

We will first consider the contest between the execution creditors.

The ground of the insurance company's claim to the proceeds of the first sale is that the Fischel execution was kept on foot fraudulently to hinder subsequent creditors, and is therefore, as to such creditors, void.

In order to maintain this position it is not enough to show that the defendant has been permitted to retain possession of the goods levied on, and use them as his own, even to the extent of selling them in the ordinary course of trade; but it must appear (in the language of our statute against frauds and perjuries, *Rev.*, p. 444, § 12,) that the execution has been contrived in fraud, with intent to hinder, delay or defraud creditors and others of their lawful demands. *Caldwell* v. *Fifield*, 4 *Zab.* 150. The *bona fides* of the execution must be successfully assailed, and in the attack the unrestricted control over the goods permitted to the defendant is only evidence.

In the present case I think the fraudulent purpose is made out.

The Fischel judgment was originally for $1101.60, dated January 31st, 1878. On November 21st, 1878, the plaintiff accepted in satisfaction of it $177.88 in cash, and two notes, each for $177.88, payable March 16th, 1879, and May 16th, 1879, respectively, which were made by Keer, the defendant, and endorsed by Herman Ise and Theodore Schrickel; and on the same day the plaintiff assigned the judgment to Ise and Schrickel. The cash, and subsequently the notes, seem all to have been paid by Keer, so that before the issuing of the present execution, June 24th, 1879, the claims of both Fischel, the plaintiff, and Ise and Schrickel, his assignees, were fully satisfied. Nevertheless, the execution was issued as upon a judgment good for its face, and endorsed with directions to levy the whole damages and costs. Such a circumstance is highly suspicious. On January 4th, 1882, Ise and Schrickel assigned the judgment to Wilhelmina Keer, the wife of the defendant, and she now is the sole claimant under it. The only evidence to support this assignment is her own testimony,

to the effect that in the early part of 1879, when her husband was in his trouble, she lent him between $600 and $700 (she cannot tell exactly how much), on condition that she should have a lien on his whole store, which, in response to a leading question by her counsel, she says means, on condition that the Fischel judgment should be made over to her and held by her against her husband and his property. This vague testimony of a transaction between husband and wife in 1879 does not establish the *bona fides* of the assignment made three years afterwards. The Fischel execution and levy never in the least interfered with Keer's control over the goods in his store, until the sheriff proceeded to sell in March, 1883, and Keer, on examination under the present rule, testifies that the goods in the store belonged to Schrickel in March last, had belonged to him for about five years, and that he, Keer, had been during that time carrying on the business for Schrickel, although never rendering to him any account of the store transactions.

From all these circumstances the conclusion seems inevitable that this execution is fraudulent as against the junior creditors and must be postponed to their claim.

The contest thus becomes one between the junior execution creditor and the landlady.

The only reason alleged for disputing the latter's claim is that she cannot resort to the fund in court or to a rule upon the sheriff, but must be confined to an action against the sheriff.

This reason counsel seeks to maintain by adhering too closely to the language of the statute. Although doubtless the landlord may maintain an action against the sheriff for removing or selling the goods before the plaintiff has paid the rent in arrear, yet the court would hardly consent to be guilty of the injustice of first compelling its officer to pay into court the moneys by which he might have avoided such a suit, and of then paying over those moneys to the plaintiff in execution, whose right to them arose only on condition that he satisfied the landlord's claim. The equities of all parties are met by

applying the proceeds of sale to the satisfaction of the rent first and afterwards of the execution, and the practice of doing so under a rule of court has obtained ever since the statute came into existence. The act was originally 8 *Anne, ch.* 14, passed, therefore, in 1710; as early as 1718 a motion by the landlord for a rule on the sheriff to pay him his arrears of rent was unchallenged with respect to propriety of procedure, (*Waring* v. *Dewberry,* 1 *Strange* 97,) and the practice has continued in vogue down to the present time. *Gore* v. *Gaston,* 1 *Strange* 643; *Case of Bennet,* 2 *Strange* 787; *Henchett* v. *Kimpson,* 2 *Wils.* 140; *Princeton Board* ads. *Gibson, Spen.* 138, 142; *Central Bank* v. *Peterson,* 4 *Zab.* 668; 1 *Chitty's Arch. Prac.* 576; 2 *Tidd's Prac.* 927.

It is unnecessary to consider the reasons for a practice which has been so long and so uniformly observed and which has alway been found to reach the ends of justice.

Let the money in court be paid over to the landlady, on account of her rent in arrears, and an order be entered that the sheriff having the second levy satisfy the balance of her rent out of the money in his hands.